UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

ETHEL HARE and FRED HARE, Individually
and as Power of Attorney for Ethel Hare,

                        Plaintiffs,                    06-CV-1081

      vs.

                                                  (NAM/GHL)

HOVEROUND CORPORATION,

                        Defendant.
_____

**APPEARANCES:**                          **OF COUNSEL:**

Ethel Hare
Fred Hare
2759 State Route 104
Mexico, New York 13114
*Plaintiffs Pro Se*

Pennock, Breedlove Law Firm                John H. Pennock, Esq.
1407 Route 9, Nine North
Building 4, 2nd Floor
Clifton Park, New York 12065
*Attorneys for Defendant*

**Hon. Norman A. Mordue, Chief U.S. District Judge**

**MEMORANDUM-DECISION AND ORDER**

**I.      INTRODUCTION**

      Plaintiffs Ethel Hare and Fred Hare ("plaintiffs") bring this diversity action, *pro se*,

against defendant Hoveround Corporation ("defendant" or "Hoveround") seeking damages for

personal injuries allegedly sustained by Ethel Hare.  Presently before the Court is defendant's

motion for summary judgment and dismissal of plaintiffs' complaint. (Dkt. No. 36).  Plaintiffs

oppose the motion. (Dkt. No. 42).

## II.    FACTUAL BACKGROUND[1]

On January 30, 2003, plaintiffs took delivery of a Teknique Power Wheelchair, Model TEK FWD.  The Teknique wheelchair was designed and manufactured by defendant and delivered for use by Ethel Hare.  As Ethel Hare's power of attorney, plaintiff Fred Hare signed Ethel Hare's name to the Hoveround Corporation Delivery Ticket.  The Delivery Ticket provided a list and description of the items that plaintiffs received including the TEK FWD, a TEK battery, a seat belt, MPV4 & Scooter Charger, a non-reclining seat and a footplate.  The Delivery Ticket also contained a Client Orientation Checklist which indicated that plaintiffs received safety information for the motorized wheelchair including: home safety information; a safety recommendation form; safety training on wheelchair ramp use; client bill of rights; client responsibilities; Hoveround policy regarding advance directives and medical emergencies; disaster readiness information; warranty information; an owner's manual; unit charging instructions and important telephone numbers.   The Delivery Ticket contained the following statement above Fred Hare's signature:

> I certify that I have received the equipment listed above from the Hoveround Corporation.  I also certify that I have been instructed in the proper care and the safe use of the above equipment.  I have received written information pertaining to the topics outlined above in the client orientation checklist.

Despite the language in the Delivery Ticket, Fred Hare testified that he did not read the entire Delivery Ticket before he signed Mrs. Hare's name.

Upon delivery, plaintiffs were provided with a Teknique Power Wheelchairs Owner's Manual/Warranty, version code D82005582.  The last page of the Owner's Manual, page 47, is

---

[1] The facts set forth in this section are taken from: (1) the Complaint; (2) the Answer; (3) Defendant's Statement of Undisputed Facts; and (4) the exhibits and evidence submitted by defendant in support of their Motion for Summary Judgment.

entitled Limited Warranty.  The Limited Warranty contained the following pertinent language:

> Limitations and exclusions:
>
> THE FOREGOING WARRANTY IS EXCLUSIVE AND IN LIEU OF ALL OTHER EXPRESS WARRANTIES, IMPLIED WARRANTIES, IF ANY, INCLUDING BUT NOT LIMITED TO THE IMPLIED WARRANTIES OF MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE, AND SHALL NOT EXTEND BEYOND THE DURATION OF THE EXPRESS WARRANTY PROVIDED HEREIN.

Plaintiffs allege that on June 18, 2004, Ethel Hare sustained injuries as a result of fall involving the wheelchair.  During her deposition, Ethel Hare could not recall where the accident happened and stated that she could not remember the accident at all.[2]

## III.   THE COMPLAINT

In the complaint, plaintiffs claim that on June 18, 2004, at approximately 4:00 p.m., while Ethel Hare was riding in the wheelchair, the wheelchair tipped over causing her to sustain injuries.  Specifically, plaintiffs allege that due to the instability of the wheelchair, plaintiff was caused to, "tip over forward onto the ground with said wheelchair landing directly on top of her striking her body against the ground".  In Count 1 of the complaint, plaintiffs claim that:

> Defendant breached the duty of care owed to plaintiff in the manufacture of the power wheelchair by, inter alia:
>
> a.      failing to make or cause to be made reasonable inspections to discover, diagnose and correct defects in the wheelchair, all of which were known to defendant, or which in the exercise of due care should have been known;
>
> b.      failing to provide adequate safety precautions for the protection of persons in a situation similar to that of plaintiff, including, but not limited to, the failure to provide appropriate and adequate anti-tip wheels used in the power wheelchair and by failing to provide an appropriate safety device on said chair, which could

_____

[2] The Court has reviewed the record in its entirety and finds no evidence or information concerning plaintiff's accident. The Court will discuss this issue *infra*.

have been provided at a cost much less than the risk presented to plaintiffs and others;

c.      failing to provide adequate warnings to plaintiff of the dangers present in, and present by, use of the wheelchair and its various components such as its anti-tip wheels;

d.      failing to provide cautionary instructions and warnings to plaintiff regarding the appropriate uses and limitations of said power wheelchair.

The acts and omissions complained of were a direct and proximate cause of plaintiff's injuries.

The acts and omissions complained of were reasonably foreseeable by defendant as the manufacturer and designer of said power wheelchair.

In Count 2, plaintiffs allege, inter alia:

Sometime prior to June 18, 2004, defendant designed and manufactured the power wheelchair, model name "Teknique" and placed it into the stream of commerce.

The wheelchair was sold in a defective condition which made it unreasonably dangerous to persons such as plaintiff, who would reasonably have been expected by defendant to be injured by the wheelchair.

In Count 3, plaintiffs allege:

Upon information and belief, the power wheelchair delivered and supplied by defendant to the plaintiffs was unfit and non-merchantable.

Upon information and belief, the condition of the "Teknique" power wheelchair was wholly due to the fault of defendant and without fault or neglect on the part of the plaintiffs, and was not properly fit for the ordinary purposes for which power wheelchairs are used and was of non-merchantable quality.

Defendant construes plaintiffs four causes of action as grounded in: 1) negligence; 2) strict

liability; 3) breach of warranty; and 4) loss of consortium.[3]  Defendant moves for summary

judgment on the first three causes of action.[4] (Dkt. No. 36).

## IV.    DISCUSSION

### A.    Requirements of Local Rule 7.1(a)(3)

The submissions of *pro se* litigants are to be liberally construed.  *Nealy v. U.S. Surgical

Corp.*, 587 F.Supp.2d 579, 583 (S.D.N.Y. 2008).  However, a *pro se* litigant is not relieved of the

duty to meet the requirements necessary to defeat a motion for summary judgment.  *Id.* (citing

*Jorgensen v. Epic/Sony Records*, 351 F.3d 46, 50 (2d Cir. 2003)).

Local Rule 7.1(a)(3) states:

> Summary Judgment Motions
>
> Any motion for summary judgment shall contain a Statement of
> Material Facts. The Statement of Material Facts shall set forth, in
> numbered paragraphs, each material fact about which the moving
> party contends there exists no genuine issue. Each fact listed shall set
> forth a specific citation to the record where the fact is established. The
> record for purposes of the Statement of Material Facts includes the
> pleadings, depositions, answers to interrogatories, admissions and
> affidavits. It does not, however, include attorney's affidavits. Failure
> of the moving party to submit an accurate and complete Statement of
> Material Facts shall result in a denial of the motion.
>
> The moving party shall also advise pro se litigants about the
> consequences of their failure to respond to a motion for summary
> judgment. See also L.R. 56.2.
>
> The opposing party shall file a response to the Statement of Material
> Facts.   The non-movant's response shall mirror the movant's
> Statement of Material Facts by admitting and/or denying each of the

---

[3] Plaintiffs do not dispute defendant's characterization of the causes of action.  The Court notes that at the time the complaint was filed, plaintiffs were represented by counsel.  On November 6, 2007, Magistrate Judge Lowe entered an Order granting plaintiffs' counsel leave to withdraw.

[4] Defendant does not move on the fourth cause of action as the parties agreed to hold the damages aspect of the case in abeyance pending the resolution of the liability phase.

> movant's assertions in matching numbered paragraphs.  Each denial
> shall set forth a specific citation to the record where the factual
> issue arises.  The non-movant's response may also set forth any additional
> material facts that the non-movant contends are in dispute.  <u>Any facts
> set forth in the Statement of Material Facts shall be deemed admitted
> unless specifically controverted by the opposing party</u>.

Local Rule 7.1(a)(3)(emphasis in original).  Where a plaintiff has failed to respond to a

defendant's statement of material facts, the facts as set forth in defendant's Rule 7.1 statement will

be accepted as true to the extent that (1) those facts are supported by the evidence in the record,

and (2) the non-moving party, if he is proceeding *pro se*, has been specifically advised of the

potential consequences of failing to respond to the movant's motion for summary judgment.

*Littman v. Senkowski*, 2008 WL 420011, at *2 (N.D.N.Y. 2008) (citing *Champion v. Artuz*, 76

F.3d 483, 486 (2d Cir. 1996)).

In the case at hand, defendant properly filed a Statement of Undisputed Facts pursuant to

Local Rule 7.1.  Defendant also provided plaintiffs with a copy of the motion papers and a copy

of a notice from this district entitled "NOTIFICATION OF THE CONSEQUENCES OF

FAILING TO RESPOND TO A SUMMARY JUDGMENT MOTION".  Plaintiffs do not dispute

that they received such notification from defendant.  Indeed, plaintiff Fred Hare submitted

opposition to defendant's motion and stated:

> Defendant's Hoveround's Statement of Undisputed Facts are
> misleading and at best are in error.  A restatement of all the items
> enumerated in the Defendant's pleading, the Plaintiff has no quarrel
> with.

However, plaintiffs failed to properly respond to defendant's Rule 7.1 statement.

Therefore, defendant's statement will be accepted as true to the extent that the facts are supported

by evidence in the record.

## B.    Standard Governing Motion for Summary Judgment

6

Summary judgment is appropriate where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c). Substantive law determines which facts are material; that is, which facts might affect the outcome of the suit under the governing law. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 258 (1986). The moving party bears the initial burden of establishing that there is no genuine issue of material fact to be decided. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the Court, viewing the evidence in the light most favorable to the nonmovant, determines that the movant has satisfied this burden, the burden then shifts to the nonmovant to adduce evidence establishing the existence of a disputed issue of material fact requiring a trial. *See id.* If the nonmovant fails to carry this burden, summary judgment is appropriate. *See id*.

###### C.      Strict Products Liability

A federal court sitting in a diversity case will apply the substantive law of the forum state on outcome determinative issues. *McCarthy v. Olin Corp.*, 119 F.3d 148, 153 (2d. Cir. 1997). In New York, there are three distinct claims for strict products liability: (1) a manufacturing defect, which results when a mistake in manufacturing renders a product that is ordinarily safe dangerous so that it causes harm, *Victorson v. Bock Laundry Mach. Co.*, 37 N.Y.2d 395 (1975); (2) a warning defect, which occurs when the inadequacy or failure to warn of a reasonably foreseeable risk accompanying a product causes harm, *Torrogrossa v. Towmotor Co.*, 44 N.Y.2d 709 (1978); and (3) a design defect, which results when the product as designed is unreasonably dangerous for its intended use, *Voss v. Black & Decker Mfg. Co.*, 59 N.Y.2d 102 (1983). *McCarthy*, 119 F.3d at 154 -155. Of the three types of products liability theories recognized under New York law, defendant argues that plaintiffs' complaint asserts that the wheelchair suffered from design and

7

manufacturing defects.[5]

### 1.    Manufacturing Defect

A manufacturing defect in a product is one which results from a mistake or error made during the manufacturing process. *Fitzpatrick v. Currie*, 52 A.D.3d 1089, 1090 (3d Dep't 2008). To plead and prove a manufacturing flaw, plaintiffs must show that a specific product unit was defective as a result of "some mishap in the manufacturing process itself, improper workmanship, or because defective materials were used in construction," and that the defect was the cause of plaintiff's injury. *Horowitz v. Stryker Corp.*, 613 F.Supp.2d 271, 283 (E.D.N.Y. 2009).  To establish a prima facie case, plaintiff may rely upon the circumstances of the accident and proof that the product did not perform as intended. *Brown v. Borruso*, 238 A.D.2d 884, 885 (4th Dep't 1997).

A defendant moving for summary judgment must submit proof in admissible form establishing that a plaintiff's injuries were not caused by a manufacturing defect in the product. *McArdle v. Navistar Int'l Corp.*, 293 A.D.2d 931, 932 (3d Dep't 2002) (holding that the defendant met the burden by submitting proof that the sweeper was built to State specifications and was thoroughly examined and approved by several DOT inspectors prior to shipment); *see also Preston v. Peter Luger Enter., Inc.*, 51 A.D.3d 1322, 1324 (3d Dep't 2008) (in support of summary judgment, the defendant offered testimony from employees regarding the bottle inspection process).  Summary judgment is not appropriate if the movant fails to provide any affidavit or cite to any deposition testimony that describes the manufacturing, safety devices or quality control process for the subject device. *Bueno v. Chase Manhattan Bank*, 2009 WL

---

[5] Plaintiffs do not dispute this contention.

960719, at *6 (N.Y. Sup. 2009); *cf. Arnold v. Krause, Inc.*, 232 F.R.D. 58, 71 (W.D.N.Y. 2004) (holding that summary judgment was appropriate as the defendant submitted the affidavit of an expert who opined that a ladder was not defective after the expert examined the subject ladder and recreated the conditions under which the plaintiff's accident took place).  In this matter, defendant, as the movant, has the burden of establishing that the wheelchair was in proper working order when it arrived at plaintiffs' home.  *See Wesp v. Carl Zeiss, Inc.*, 11 A.D.3d 965, 968 (4th Dep't 2004).

        With respect to defendant's motion for summary judgment and dismissal of the manufacturing defect claim, defendant argues, "[p]laintiffs provide no evidence of a defect in the [] manufacture of the Hoveround product".  On the motion, defendant provided affidavits from Anthony Digiovanni, one of defendant's employees, and William Ammer, defendant's expert.  Mr. Digiovanni has been employed by defendant for eight years and is the Engineering Director of the technical team that developed the subject wheelchair.  In his capacity as Engineering Director, Mr. Digiovanni stated that he was involved, "in the manufacture of the subject wheelchair including review of quality control evaluations and records from individual components used and overall final evaluation of completed power wheelchairs".  On September 16, 2008, Mr. Digiovanni inspected the subject wheelchair and concluded that the wheelchair, "in all respects except for normal wear and tear, represented a Hoveround TEK FWD Power Wheelchair as designed and manufactured with Food and Drug Administration (FDA) approval".  In further support of the motion, defendant provided an affidavit from their expert witness, William Ammer.  Mr. Ammer is an engineer and prepared an affidavit after reviewing various documents and materials including test reports for the subject wheelchair from the University of Pittsburgh, the FDA 510K application from Hoveround, the 510K approval letter from the FDA

and the Owner's Manual for the subject wheelchair.[6]  Mr. Ammer opined that:

> the design of the subject chair, and its associated warnings and labeling, meet or exceed the requirements of the ANSI/RESNA and FDA for power wheel chairs and that the product, as designed, tested and manufactured, was and remains reasonably safe and fit for the purpose intended for such chairs".[7]

Having reviewed the affidavits together with the record, the Court finds that defendant has failed to meet the burden of proof necessary to warrant summary judgment and dismissal of this claim.  Defendant has not addressed the facts as they pertain to the manufacturing defect claim and defendant's arguments lack any meaningful analysis of the record or the applicable caselaw. Defendant has not offered any evidence concerning the manufacturing process for the Teknique wheelchair.  Mr. Digiovanni claimed to be directly involved with the manufacture of the wheelchairs however, Mr. Digiovanni's affidavit lacks any information with regard to Hoveround's manufacturing process or any inspection/testing methods that the Teknique wheelchair underwent prior to shipment.  Mr. Ammer's affidavit is similarly deficient as it is devoid of any information describing the manufacturing, inspection or testing process for the subject wheelchair.

Furthermore, defendant has failed to provide affirmative proof that the subject wheelchair was free of any defects when it arrived at plaintiff's home.  Although Mr. Digiovanni inspected the subject wheelchair and concluded that it was free of manufacturing defects, Mr. Digiovanni's inspection occurred more than four years after the subject accident.  *See generally Schriber v. Meloe Co.*, 273 A.D.2d 650, (3d Dep't 2000) (holding that the lower court properly excluded an

---

[6] The FDA Premarket Notification or 510k process requires manufacturers to notify the FDA of their intent to market a medical device.

[7] ANSI/RESNA is American National Standards Institute/Rehabilitation Engineering and Assistive Technology Society of North America.

expert's opinion based upon an inspection of a machine four years after the incident).  Mr.
Ammer claims that he is "familiar with the chair" however, Mr. Ammer did not inspect the
subject wheelchair.  Moreover, Fred Hare testified that the day after plaintiffs received the
wheelchair, he complained to Joanne Brown because the wheelchair tipped off of a ramp.
Defendant has failed to establish that the subject wheelchair was free of defects when it left
defendants control.  Thus, defendant has failed to sustain the burden of proof on a motion for
summary judgment.

Moreover, defendant did not address plaintiff's accident and failed to argue that plaintiff's
accident was caused by something other than a manufacturing defect in the product.  *Vereczkey v.
Sheik*, 57 A.D.3d 523, 526 (2d Dep't 2008) (the defendants failed to establish their entitlement to
judgment as a matter of law as they did not establish that the product was not defective and that
the accident was caused by something other than a manufacturing defect) (citing *Speller v. Sears,
Roebuck & Co.*, 100 N.Y.2d 38, 42 (2003)).  As the Court previously stated, there is no evidence
concerning how or where plaintiff's accident took place.  In support of the motion, defendant
provided only 4 of the 134 pages of Fred Hare's deposition transcript, none of which discuss the
accident.  Further, the record establishes that the parties conducted the deposition of Dr. Bernard
Boozer, an alleged witness to the accident.  However, Dr. Boozer's deposition transcript is not
part of the record herein.  Finally, although plaintiffs claim that Joanne Brown witnessed the
accident or possesses some pertinent information, defendant failed to address that contention and
the record contains no information concerning Ms. Brown.

The Court finds that defendant has failed to prove that no triable issues of fact exist with
respect to plaintiffs' claim of a manufacturing defect.  Failure to make such prima facie showing
requires a denial of the motion, regardless of the sufficiency of the opposing papers.  *Restrepo v.*

*Rockland Corp.*, 38 A.D.3d 742, 743 (2d Dep't 2007) (citing *Alvarez v. Prospect Hosp.*, 68 N.Y.2d 320, 324 (1986)).  The defendant has not presented affirmative proof that the subject chair was free of any defect when it left defendant's control and defendant has not established that a manufacturing defect in the wheelchair did not cause the accident.  Defendant relies solely upon the absence of any proof presented by plaintiff, which is insufficient to support a motion for summary judgment.  *See Antonucci v. Emeco Indus., Inc.*, 223 A.D.2d 913, 915 (3d Dep't 1996).  As defendant has not met the burden of proof on the issue, the burden never shifts to plaintiffs to come forward with admissible evidence.  Accordingly, defendant's motion for summary judgment and dismissal of plaintiffs' claims of a manufacturing defect is denied.

### 2.      Design Defect

In order to establish a *prima facie* case in strict products liability for a design defect, a plaintiff must show that the manufacturer breached its duty to market safe products when it marketed a product designed so that it was not reasonably safe and that the defective design was a substantial factor in causing plaintiff's injury.  *Voss*, 59 N.Y.2d at 107.  The proper standard is whether it is a product which, if the design defect were known at the time of the manufacture, a reasonable person would conclude that the utility of the product did not outweigh the risk inherent in marketing a product designed in that manner.  *Id.* at 108.  Liability attaches when the product, as designed, presents an unreasonable risk of harm to the user.  *Preston*, 51 A.D.3d at 1323 (the defendant met its burden on summary judgment with the submission of affidavits from its president and manager that the bottle exceeded industry standards and further, that the plaintiff's accident was the only incident where the bottle broke) (citing *Voss*, 59 N.Y.2d at 107).  It is the plaintiff's burden to present "evidence that the product, as designed, presented a substantial likelihood of harm and feasibly could have been designed more safely."  *Arnold*, 232 F.R.D. at

72.  In that regard, the plaintiff may initially rely on circumstantial evidence, including the occurrence of an accident, that the product did not function as intended, to prove a design defect. *Id*. (citing *Dubecky v. S2 Yachts, Inc*., 234 A.D.2d 501 (2d Dep't 1996)).   In this matter, plaintiffs may rely upon the fact that the wheelchair tipped over to establish that the chair failed to function as intended based on a design defect thus shifting the burden to defendant, as the party moving for summary judgment, to present evidence that the accident was not necessarily attributable to any defect in the wheelchair.  *See Arnold*, 232 F.R.D. at 72.

Upon a review of the record, the Court finds that defendant met the burden of establishing a prima facie entitlement to summary judgment on the design defect claim.  Mr. Ammer averred that he has been designing and testing wheelchairs since 1999.  Mr. Ammer stated that the subject wheelchair was granted a 510K approval by the FDA in 2001.  Mr. Ammer opined that the design of the wheelchair met or exceeded the requirements of the FDA and ANSI/RESNA for power wheelchairs and that the design was reasonably safe and fit for the purpose intended.  In addition, Mr. Digiovanni provided information concerning the 510K process and stated that upon receipt of clearance number K010075 from the FDA, the device was "suitable for marketing and sale in the US and with no new issues of safety and effectiveness".  Mr. Digiovanni also stated that in his capacity as Engineering Director, he monitored the performance of the subject wheelchair.  Mr. Digiovanni stated that Hoveround maintained a Medical Device Log for the subject wheelchair and upon an examination of that information, he found no reports of incidents similar to plaintiffs.  Magistrate Judge Lowe conducted an *in camera* review of the logs and found that, "the prior incidents were not sufficiently similar to Mrs. Hare's".  Based upon the record, the Court finds that defendant met the initial burden of establishing entitlement to summary judgment with respect to the design defect claim.  Therefore, the burden shifts to plaintiffs to demonstrate by

13

admissible evidence, that an issue of fact exists requiring a trial of the issue.   The Court finds that

plaintiffs failed to sustain that burden.

In opposition to the motion, plaintiffs offered a report from Gary P. Finn.[8]  Mr. Finn is

affiliated with Monroe Wheelchair and claims an expertise in matters involving power

wheelchairs.  In his letter, Mr. Finn stated that:

> I received correspondence from Fred and Ethel requesting a consult as
> to the design of the Hoveround Teknique FWD.  I informed the family
> that I was not a design engineer and could not complete the requested
> task, but offered an evaluation as to the application of the product and
> it's suitability for Mrs. Hare.

Defendant objects to the submission of Mr. Finn's report.[9]  However, even assuming that

the Court accepts plaintiffs' expert report, Mr. Finn's opinion is insufficient to raise a triable issue

of fact with respect to a design defect.  Mr. Finn specifically declined to offer any opinion with

regard to the design of the wheelchair and failed to address any of the factors which plaintiffs

must prove in order to establish that the wheelchair was not reasonably safe.  *See June v.*

*Lift-A-Loft Equipment, Inc.*, 1992 WL 168181, at *3 (N.D.N.Y. 1992).

Plaintiffs remaining submission consists only of a one-page signed statement from Mr.

Hare which is not in admissible form.  Plaintiffs allege that the chair was "unsuited" for Ethel

Hare however, the fact that a product does not operate properly does not by itself mean that the

product was defectively designed.  *See June*, 1992 WL 168181, at *3.  Plaintiffs fail to offer any

other proof to create a question of fact as to whether or not the wheelchair was not reasonably

safe as designed.  Accordingly, based upon the record, defendant is entitled to summary judgment

---

[8] The Court notes that Mr. Finn's report consists of a one page letter that is not in proper evidentiary form.

[9] Defendant argued that plaintiffs time for expert disclosure passed and defendant did not consent to plaintiffs presentation of an expert beyond the time for disclosure.  However, the Court has not been presented with a motion to preclude plaintiffs' expert submission.

14

and dismissal of plaintiffs' claims of strict products liability for design defect.

### D.    Breach of Implied Warranties

In Count 3 of the complaint, plaintiffs argue that the wheelchair was unfit and non-merchantable.  Defendant argues that plaintiffs failed to raise an issue of fact as to whether there was a breach of an implied warranty.[10]  Specifically, defendant argues that plaintiffs' breach of implied warranty claims should be dismissed as defendant expressly disclaimed any implied warranties in the Owner's Manual.

Implied warranties of merchantability and fitness for a particular purpose are governed by Uniform Commercial Code (UCC) §§ 2-314 and 2-315.  Under UCC § 2-314, a plaintiff need only show that the product was not "fit for the ordinary purposes for which such goods are used". *Denny v. Ford Motor Co.*, 87 N.Y.2d 248, 258 (1995).   Under UCC § 2-315, a warranty of fitness is implied in every case in which the buyer is relying on the seller's skill or judgment to select or furnish suitable goods.  *McCarthy v. Checchin*, 18 Misc.3d 1134 (N.Y. Sup. 2004). Where a limited warranty expressly excludes any common-law implied warranty, it is exclusive and a cause of action sounding in common-law breach of contract may not be maintained.  *Lantzy v. Advantage Builders, Inc.*, 60 A.D.3d 1254, 1255 (3d Dep't 2009).  UCC § 2-316(2) provides, in pertinent part that, to exclude or limit an implied warranty of merchantability, "the language [of the exclusion or limitation] must mention merchantability and in case of a writing must be conspicuous."  The test to determine whether a clause is "conspicuous" so as to satisfy UCC § 2-316 "is whether a reasonable person would notice the disclaimer when its type is juxtaposed against the rest of the agreement." *Commercial Credit Corp.v. CYC Realty, Inc.*, 102 A.D.2d 970,

---

[10] Plaintiffs did not respond to defendant's arguments with respect to implied warranties.

972 (3d Dep't, 1984); *see also Travelers Ins. Co. v. Howard E. Conrad, Inc.*, 233 A.D.2d 890, 891 (4th Dep't 1996) (the type size of the waiver provision was larger and stood out in capital letters); *see also Sky Acres Aviation Servs., Inc. v. Styles Aviation, Inc.*, 210 A.D.2d 393 (2d Dep't 1994) (holding that the invoice contained a pre-printed disclaimer in bold which was readily noticeable). The disclaimer must also specify the warranties that are being disclaimed. *See Maltz v. Union Carbide Chemicals & Plastics Co.*, 992 F.Supp. 286, 304 (S.D.N.Y. 1998).

In the case at hand, the last page of the Owner's Manual is entitled "Limited Warranty". The subject disclaimer is in capital letters and specifically identifies the implied warranties being disclaimed as those of merchantability and fitness for a particular purpose. The Court finds that a reasonable person would notice the disclaimer. Indeed, Fred Hare executed the Delivery Ticket and acknowledged that he received, read and understood the Owner's Manual and warranty information. Plaintiff has offered no argument or evidence in opposition to defendant's motion on this issue. Accordingly, based upon the record, defendant is entitled summary judgment and dismissal of plaintiffs' claims of breach of implied warranties.[11]

**E.  Negligence**

To make out a *prima facie* case for negligence in New York, plaintiff must show: (1) that the manufacturer owed him a duty to exercise reasonable care; (2) breach of that duty so that a product is rendered defective, i.e., reasonably certain to be dangerous; (3) that the defect was the proximate cause of plaintiff's injury; and (4) loss or damage. *See, e.g., McCarthy*, 119 F.3d at 156. In the complaint, plaintiffs alleges that defendant failed to provide adequate safety

---

[11] Defendant also alleges that plaintiffs' breach of warranty claims must fail as plaintiffs have failed to identify any defect in the product and further, that the Owner's Manual clearly sets forth the intended use for the product. However, defendant failed to provide evidence to support either assertion. Moreover, as plaintiffs' claims of breach of implied warranties are subject to dismissal due to the disclaimer, the Court finds defendant's remaining arguments in this regard to be moot.

16

precautions and adequate warnings.  A plaintiff asserting a failure to warn must establish that: (1)
a manufacturer has a duty to warn; (2) against dangers resulting from foreseeable uses about
which it knew or should have known; and (3) that failure to do so was the proximate cause of the
harm.  *Burke v. Spartanics, Ltd.*, 252 F.3d 131, 139 (2d Cir. 2001).   "Once a warning is given, the
focus shifts to the adequacy of the warning . . . [New York] courts have required . . . that
warnings must clearly alert the user to avoid certain unsafe uses of the product which would
appear to be normal and reasonable." *Cooley v. Carter-Wallace Inc.*, 102 A.D.2d 642, 646 (4th
Dep't 1984) (citations omitted).  The Second Circuit has emphasized, where a plaintiff alleges a
failure to warn, "[t]he adequacy of the instruction or warning is generally a question of fact to be
determined at trial and is not ordinarily susceptible to the drastic remedy of summary judgment."
*Urena*, 114 F.3d at 366 (citing *Beyrle v. Finneron*, 199 A.D.2d 1022 (4th Dep't 1993)).   A court
may dismiss a failure to warn claim as a matter of law if the plaintiff cannot prove that the
absence of a warning caused her injury.  *Mustafa v. Halkin Tool, Ltd.*, 2007 WL 959704, at *17
(E.D.N.Y. 2007) (the defendant successfully argued that it was not liable because the plaintiff was
fully aware of the danger and further, that the warnings were not the proximate cause of the
accident); *see also Lichtenstein v. Fantastic Mdse. Corp.*, 46 A.D.3d 762, 764-765 (2007)
(holding that deposition testimony that additional or more conspicuous warnings would have
alerted the plaintiff's mother to the potential for burns from the subject product raised an issue of
fact as to whether the lack of adequate warnings was the proximate cause of the infant's injuries).

In this action, defendant's argument in support of summary judgment and dismissal of the
negligence cause of action consists of one sentence, "defendant has demonstrated that its product
that the design of the subject chair, and its associated warnings and labeling, satisfy the
requirements of the ANSI/RESNA and FDA for power wheel chairs and that the product, as

designed, tested and manufactured, was and remains reasonably safe and fit for the purpose

intended for such chairs".  Defendant provides no further argument or analysis in support of

dismissal of the negligence claims.

        Upon review of the record, the Court finds that defendant has failed to establish that

defendant's warnings and safety precautions were adequate as a matter of law.  Defendant's

Statement of Undisputed Facts contains references to various paragraphs in the Owner's Manual

that provide warnings/cautions with regard to the operation of the wheelchair.  However,

defendant does not provide any argument or evidence to prove that there is no triable issue of fact

with regard to the adequacy of such warnings.  The excerpts of plaintiffs' deposition transcripts

do not contain any reference or testimony concerning the warnings including whether or not

plaintiffs understood or even read the warnings.  Based upon the record, defendant has not

excluded all possibility that plaintiffs might prove their claim as a matter of law as "reasonable

minds might disagree as to the extent of plaintiff's knowledge, " *Brady v. Dunlop Tire Corp.*, 275

A.D.2d 503, 505 (3d Dep't 2000), and the question is therefore one for a jury.   As defendant has

failed to demonstrate a *prima facie* entitlement to judgment as a matter of law dismissing the

negligence cause of action, the burden did not shift to plaintiffs to raise a triable issue of fact..

*See Winegrad*, 64 N.Y.2d at 853.   Accordingly, defendant's motion for summary judgment and

dismissal of plaintiffs' negligence cause of action is denied.

**V.        CONCLUSION**

        It is therefore

        **ORDERED** that defendant's motion for summary judgment and dismissal of plaintiffs'

claims of strict products liability based upon a manufacturing defect (Dkt. No. 36) is **DENIED**,

and it is further

**ORDERED** that defendant's motion for summary judgment and dismissal of plaintiffs' claims of strict products liability based upon a design defect (Dkt. No. 36) is **GRANTED**, and it is further

**ORDERED** that defendant's motion for summary judgment and dismissal of plaintiffs' claims of breach of implied warranties (Dkt. No. 36) is **GRANTED**, and it is further

**ORDERED** that defendant's motion for summary judgment and dismissal of plaintiffs' claims of negligence (Dkt. No. 36) is **DENIED**; and it is further

**ORDERED** that the parties electronically file a joint status report as to estimated length of trial and any outstanding issues on or before October 1, 2009.

**IT IS SO ORDERED.**

Date:   September 22, 2009

Norman A. Mordue
Chief United States District Court Judge

19